# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff/Respondent, | |
| v. | No. 14-20066-JAR-2 |
| GILBERTO CANO-BAHENA, | |
| Defendant/Petitioner. | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Gilberto Cano-Bahena's *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 203).[1] The Government has responded.[2] Having carefully reviewed the record and the arguments presented, the Court denies Petitioner's motion without further evidentiary hearing.

## I. Factual and Procedural Background

*Overview*

On July 25, 2014, the Government filed a complaint in the District of Kansas charging Gilberto Cano-Bahena ("Cano-Bahena") and two co-defendants with conspiring to distribute and possess with intent to distribute more than 500 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(viii), and 18 U.S.C. § 2.[3] The complaint also charged Cano-Bahena and his co-defendants with, on or about July 16, 2014, aiding and abetting the possession with intent to

---

[1]Cano-Bahena filed his motion on a 28 U.S.C. § 2241 form, however, § 2241 is not applicable to his arguments so the Court construes his filing as a § 2255 motion. *See* D. Kan. 18-3287-JAR, Doc. 4.

[2]Doc. 206.

[3]Doc. 1.

distribute 50 grams or more of a mixture and substance containing a detectible amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii), and 18 U.S.C. § 2.[4]

*Change of Plea Hearing*

On May 27, 2015, Cano-Bahena pleaded guilty, pursuant to a written plea agreement, to a one count information, which charged him with aiding and abetting the possession of five grams or more of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2.[5] The Court appointed James R. Campbell to represent Cano-Bahena.[6]

During the plea hearing, the Court conducted a colloquy with Cano-Bahena.[7] Cano-Bahena admitted that on approximately July 16, 2014, he aided and abetted Jose Luis Menera-Alvarez when he knowingly and intentionally possessed with intent to distribute five grams or more of methamphetamine on that date.[8] At the plea hearing, the prosecutor advised Cano-Bahena that his conviction on these charges could subject him to a minimum sentence of five years (60 months) and not more than forty years if he did not have a prior drug conviction, but that if he had a prior felony drug offense conviction, the sentence increased to a minimum of ten years and not more than life in prison.[9] Cano-Bahena acknowledged that he understood these potential sentences.[10] The Court fully explained—and Cano-Bahena acknowledged his understanding of—the two exceptions to the mandatory minimum sentence: the "safety valve"

---

[4]*Id.*

[5]Doc. 78; Doc. 145 at 12, 26.

[6]Doc. 3.

[7]Doc. 145 at 6–23.

[8]*Id.* at 12.

[9]*Id.* at 19.

[10]*Id.* at 19–20.

exception and the substantial assistance exception.[11] He also acknowledged that neither the Court, his attorney, nor the prosecutor could "predict . . . with certainty what sentence [he would] receive, until the "complicated process of sentencing" occurred.[12]

*Presentence Investigation Report*

The United States Probation Office prepared a Presentence Investigation Report ("PSIR") in anticipation of sentencing using the 2015 edition of the United States Sentencing Commission Guidelines Manual.[13] The PSIR calculated Cano-Bahena's base level at 36 pursuant to U.S.S.G. § 2D1.1 for an offense involving at least 1.5 kilograms but less than 4.5 kilograms of "Ice."[14] Additionally, two levels were added for obstruction of justice based on recklessly creating "a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer" under U.S.S.G. § 3C1.2,[15] resulting in an adjusted level of 38.[16] Finally, with a three-level decrease for acceptance of responsibility, the total offense level was 35.[17] The PSIR also noted that, "[a]t the time of this report, the defendant had not provided to the Government all information and evidence the defendant has concerning the offense," preventing him from qualifying for a two-level reduction under the "safety valve" pursuant to U.S.S.G. § 2D.1(b)(17).[18]

---

[11]*Id.* at 20.
[12]*Id.* at 18.
[13]Doc. 139.
[14]*Id.* ¶¶ 32–33, 38.
[15]*Id.* ¶ 42.
[16]*Id.* ¶¶ 43, 46–47.
[17]*Id.*
[18]*Id.* ¶ 39.

Based on a total offense level of 35 and a criminal history category of I, Cano-Bahena's Guideline range was 168 to 210 months imprisonment.[19] Cano-Bahena objected to the two-level enhancement for reckless endangerment,[20] and he further objected to the entire 1.5 kilograms of "Ice" being attributed to him, arguing that he did not participate in either the June 17, 2014 or July 9, 2014 controlled buy of methamphetamine.[21]

*Motion to Withdraw Guilty Plea*

Prior to sentencing, Cano-Bahena, through new appointed counsel,[22] filed a motion to withdraw his guilty plea on March 22, 2016.[23] He alleged that when he entered his guilty plea, he was unaware of the consequences of pleading guilty due to Mr. Campbell's failure as counsel.[24] After oral argument, the Court denied the motion, finding that Cano-Bahena received effective assistance of counsel.[25] Specifically, the Court found that Mr. Campbell conveyed all plea offers to Cano-Bahena and discussed with him at length the risks and benefits of entering into a binding plea agreement.[26] The Court further explained that "[t]here really is no suggestion that Mr. Campbell . . . rendered ineffective assistance of counsel,"[27] and that with the assistance of counsel, "Mr. [Cano-Bahena pleaded guilty] knowingly and voluntarily."[28]

---

[19]*Id.* ¶ 54, 70.

[20]*Id.* ¶ 95–104.

[21]*Id.* ¶ 114–20.

[22]The Court granted Mr. Campbell's motion to withdraw as attorney and appointed Robert N. Calbi to represent Cano-Bahena on September 24, 2015. Docs. 120, 121.

[23]Doc. 142.

[24]*Id.* 2–3.

[25]Doc. 163 at 43.

[26]*Id.* at 35.

[27]*Id.*

[28]*Id.* at 37.

4

*Sentencing*

The Court conducted a sentencing hearing on September 26, 2016.[29] The Court accepted the parties' agreement that Cano-Bahena should only be accountable for 453 grams of "Ice" methamphetamine, consisting of the 436 grams of methamphetamine found in his car on July 16, 2014 and the 17 grams found in his apartment pursuant to a consensual search.[30] This resulted in a base offense level of 32, rather than 36 as recommended in the PSR, which attributed more than an additional kilogram of methamphetamine to Cano-Bahena.[31]

The Court also heard testimony and argument regarding the two-level enhancement for obstruction of justice based on recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing law enforcement.[32] The Court found that the Government established by a preponderance of the evidence that Cano-Bahena attempted to evade law enforcement in a manner that placed individuals at risk of death or serious bodily injury, and accordingly overruled and denied Cano-Bahena's objection to the enhancement.[33] Accordingly, the Court applied a two-level enhancement pursuant to U.S.S.G. § 3C1.2.[34] Cano-Bahena also received a three-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, resulting in a final adjusted offense level of 31.[35]

---

[29]Doc. 164.
[30]*Id.* at 4.
[31]*Id.* at 5, 27.
[32]*Id.* at 5–24.
[33]*Id.* at 26–27.
[34]*Id.* at 27–28.
[35]*Id.* at 28.

As a result, and given his criminal history category I, Cano-Bahena's Guideline range was 108 to 135 months.[36] The Government recommended a sentence of 108 months based on Cano-Bahena's co-defendants receiving sentences of 100 and 108 months;[37] Cano-Bahena argued for a below-Guidelines sentence and further requested the Court not issue a sentence above the minimum guideline range of 108 months.[38] Considering the parties' recommendations, the Court sentenced Cano-Bahena to a sentence at the low-end of the applicable Guideline: 108 months' imprisonment and 4 years of supervised release.[39]

*Tenth Circuit Appeal*[40]

Cano-Bahena appealed his sentencing to the Tenth Circuit, challenging (1) the Court's denial of his motion to withdraw his plea, (2) the two-level sentencing enhancement for obstructing justice, and (3) the substantive reasonableness of his sentence.[41] The Tenth Circuit found that the Court did not abuse its discretion in denying Cano-Bahena's motion to withdraw his guilty plea, applying the two-level obstruction of justice enhancement, or imposing a 108-month sentence.[42] Accordingly, the Tenth Circuit affirmed the Court's judgment.[43]

First, Cano-Bahena argued that his plea "was not knowing and therefore not voluntary," and that his "counsel was ineffective."[44] The Tenth Circuit disagreed, concluding "that Cano-

---

[36]*Id.*

[37]*Id.* at 32–33.

[38]*Id.* at 33–35.

[39]*Id.* at 39.

[40]Throughout his motion, Cano-Bahena asserts that he did not appeal his sentence. These assertions are contrary to the record as Cano-Bahena appealed his sentence to the Tenth Circuit.

[41]*United States v. Cano-Bahena*, 713 F. App'x 753, 757 (10th Cir. 2017) (unpublished).

[42]*Id.* at 760–63.

[43]*Id.* at 763.

[44]*Id.* at 758.

6

Bahena's arguments are refuted entirely by the record in this case."[45] The Tenth Circuit found that

> Cano-Bahena ma[d]e no serious attempt in [his] appeal to challenge any of the district court's factual findings. And, by failing to do so, Cano-Bahena clearly [could not] prevail on his claims that his counsel was ineffective or, in turn, that his guilty plea was not knowing and voluntary.[46]

Similarly, with respect to Cano-Bahena's challenge of the two-level enhancement, the Tenth Circuit found that he made "no attempt to challenge the district court's finding," which was "amply supported by [an investigating agent's] undisputed testimony."[47]

Lastly, Cano-Bahena argued that his sentence violated 18 U.S.C. § 3553(a)(6), insofar as his "sentence was as great or greater than his co-defendants whose roles in the crime we[re] greater than his."[48] The Tenth Circuit found, however, that "Cano-Bahena [did] not seriously dispute the district court's findings on this point," and "that the record on appeal amply support[ed] the district court's findings, including the reasonable inference it drew from the circumstantial evidence."[49] Moreover, although one of Cano-Bahena's co-defendants' sentence had been reduced from 108 to 87 months, the Tenth Circuit held that "these circumstances do not alter our analysis of Cano-Bahena's challenge to the substantive reasonableness of his sentence."[50]

---

[45] *Id.* at 763.

[46] *Id.* at 760.

[47] *Id.* at 761.

[48] *Id.* at 762 (alteration in original).

[49] *Id.* at 763.

[50] *Id.* at 762 n.5.

7

## II. Standard

Section 2255 entitles a federal prisoner to relief if the court finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or [is] otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."[51] The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[52] A § 2255 petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[53] An evidentiary hearing is not necessary where the factual allegations are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[54]

## III. Discussion

Cano-Bahena asserts three reasons for challenging his sentence: (1) ineffective assistance of counsel; (2) substantive unreasonableness of the sentence; and (3) the new First Offender Guidelines. The Court addresses each in turn.

### A. Ineffective Assistance of Counsel

The Sixth Amendment guarantees that "[i]n all criminal prosecution, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[55] A successful claim of

---

[51] 28 U.S.C. § 2255(b).

[52] *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting 28 U.S.C. § 2255(b)).

[53] *In re Lindsey*, 582 F.3d 1173, 1175 (10th Cir. 2009).

[54] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235 (1996) ("[t]he allegations must be specific and particularized, not general or conclusory"); *United States v. Fisher*, 38 F.3d 1143, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that are merely conclusory in nature and without supporting factual averments).

[55] U.S. Const. amend. VI; *see Kansas v. Ventris*, 556 U.S. 586 (2009).

ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[56] First, a defendant must show that his counsel's performance was deficient in that it "fell below an objective standard of reasonableness."[57] To meet this first prong, a defendant must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance."[58] This standard is "highly demanding."[59] Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[60] In all events, judicial scrutiny of the adequacy of attorney performance must be strongly deferential: "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[61] Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error, and "every effort should be made to 'eliminate the distorting effects of hindsight.'"[62]

To meet the second prong, a defendant must also show that his counsel's deficient performance actually prejudiced his defense.[63] To prevail on this prong, a defendant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different."[64] A "reasonable probability" is a "probability sufficient

---

[56]466 U.S. 668 (1984).

[57]*Id.* at 688.

[58]*Id.* at 690.

[59]*Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[60]*Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).

[61]*Strickland*, 466 U.S. at 687.

[62]*Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

[63]*Strickland*, 466 U.S. at 687.

[64]*Id.* at 694.

9

to undermine confidence in the outcome."[65] This, in turn, requires the court to focus on "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[66]

A defendant is entitled to the effective assistance of counsel during plea negotiations.[67] "The performance prong of *Strickland* requires a defendant to show that counsel's representation fell below an objective standard of reasonableness."[68] "To show prejudice in the guilty plea context, the defendant must establish that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and insisted on going to trial.'"[69]

In all events, a defendant must demonstrate both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[70] "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"[71]

### 1. Counsel promised a 60-month sentence that Cano-Bahena did not receive

Cano-Bahena first asserts that his counsel, Mr. Campbell, was ineffective because he promised Cano-Bahena would receive the statutory minimum 60-month sentence.[72] As

---

[65]*Id.*

[66]*Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citing *Strickland*, 466 U.S. at 690).

[67]*Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012).

[68]*Id.* at 163 (internal quotation marks omitted).

[69]*Heard v. Addison*, 728 F.3d 1170, 1176 (10th Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985)).

[70]*Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

[71]*Id.* (quoting *Strickland*, 466 U.S. at 697); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

[72]Doc. 203 at 6–7.

previously noted by both this Court and the Tenth Circuit, the record does not support this assertion. Contrary to Cano-Bahena's claim, Mr. Campbell testified that he discussed the process of sentencing and results of entering a guilty plea at length with Cano-Bahena. Moreover, during its colloquy with Cano-Bahena at the change of plea hearing, the Court described the sentencing process to Cano-Bahena, emphasizing that it is a complicated process and neither it, nor his attorney, nor the prosecutor could accurately predict or guarantee a certain sentence at the time. Importantly, Cano-Bahena acknowledged his understanding of the sentencing process before pleading guilty, allowing the Court to find that he knowingly and voluntarily entered into the plea agreement. Thus, even if the Court determined that Mr. Campbell provided ineffective assistance, Cano-Bahena cannot show he was prejudiced as he knowingly and voluntarily entered his guilty plea and cannot show that he would not have pleaded guilty in the absence of his counsel's alleged ineffective assistance. An erroneous sentencing prediction is not prejudicial where the court has conducted an adequate Rule 11 colloquy.[73]

### 2. Counsel said Cano-Bahena did not qualify for the "Safety Valve"

Cano-Bahena contends that Mr. Campbell failed to explain the "safety valve" exception.[74] The record does not support this assertion. Mr. Campbell testified that he explained the sentencing process to his client, and Cano-Bahena told the Court he understood the "safety valve" during the plea revocation hearing. In its colloquy at the change of plea hearing, the Court also described the "safety valve" exception to Plaintiff, stating,

> And I don't know if it applies to you. It generally applies to
> people that have no prior criminal convictions and that have not

---

[73] *See United States v. Kutilek*, 260 F. App'x 139, 147 (10th Cir. 2008) (no prejudice from attorney miscalculation in light of judge's statements at plea hearing).

[74] Doc. 203 at 7.

> engaged in any violent conduct. . . . But if the safety valve
> exception applies to you, that would give me authority to sentence
> you to something less than the mandatory minimum.[75]

Moreover, even if Mr. Campbell had not explained the "safety valve" exception, Cano-Bahena cannot show he was prejudiced because he did not qualify for the "safety valve." The "safety valve" exception allows a sentencing court to sentence a defendant to something below the mandatory minimum if the defendant satisfies certain requirements, including that the offense was nonviolent and at the time of sentencing "has truthfully provided to the Government all information and evidence" concerning the offense.[76] According to the PSIR, however, "[Cano-Bahena] had not provided to the Government all information and evidence [he had] concerning the offense. Therefore, is does [sic] not qualify for a two level reduction under the 'safety valve' pursuant to U.S.S.G. § 2D1.1(b)(17)."[77] The Court thus finds that Cano-Bahena could not have received a reduction in his sentence pursuant to the "safety valve" exception, and thus he has not satisfied *Strickland*'s performance prong.

### B.  Substantive Reasonableness of Sentence

Cano-Bahena argues that his sentence is substantively unreasonable because his co-defendant received a reduced sentence.[78] From the record, Cano-Bahena is likely referring to Emanuel Godinez-Perez, whose sentence was reduced 24 months—from 108 to 87 months—upon remand from the Tenth Circuit.[79]

---

[75]Doc. 145 at 20.

[76]18 U.S.C. § 3553(f); *see also* U.S.S.G. §§ 5C1.2, 2D1.1(b)(17) (2015).

[77]Doc. 139 at ¶ 39.

[78]Doc. 203 at 7–8.

[79]*United States v. Godinez-Perez*, 737 F. App'x 894, 895–96 (10th Cir. 2018) (unpublished).

The applicable reasons for Godinez-Perez's sentence reduction, however, do not apply to Cano-Bahena. Godinez-Perez's original total offense level was 31, in part because of 887.26 grams of methamphetamine found in a storage unit were attributed to him.[80] On appeal, the Tenth Circuit determined that this attribution occurred without any "particularized findings regarding relevant conduct attributable to Godinez" and remanded the decision.[81] Upon remand, the Court re-sentenced Godinez-Perez, considering only the methamphetamine particularly attributable to him, lowering his total offense level to 29 and resulting in an 87 month sentence.[82]

By contrast, the Court sentenced Cano-Bahena based on the 453 grams of methamphetamine directly attributable to him—specifically, the methamphetamine found in his car and his apartment.[83] Despite the PSIR originally attributing over 1.5 kilograms of methamphetamine to Cano-Bahena, Cano-Bahena objected, claiming that only a fraction of the methamphetamine was attributable to him.[84] Cano-Bahena's guilty plea was based on 453 grams of methamphetamine, and at sentencing, the parties agreed the Court should calculate Cano-Bahena's sentence using only the 453 grams of methamphetamine directly attributable to him. Therefore, despite a co-defendant receiving a reduced sentence, the record does not support applying the same rationale to reduce Cano-Bahena's sentence because the Court sentenced Cano-Bahena based on the methamphetamine attributable to him. Moreover, to the extent that Cano-Bahena is arguing that his sentence is substantively unreasonable because his "sentence was as great or greater than his co-defendants [sic] whose roles in the crime were greater than

---

[80]*See United States v. Godinez-Perez*, 864 F.3d 1060, 1064–68 (10th Cir. 2016).
[81]*Id.* at 1061.
[82]737 F. App'x at 896.
[83]Doc. 164 at 4, 27.
[84]Doc. 139 at ¶¶ 114–18.

his," the Tenth Circuit found this argument meritless on appeal.[85] Accordingly, the Court finds that Cano-Bahena's sentence was not substantively unreasonable.

### C. First Offender Guidelines

Lastly, Cano-Bahena seeks a reduced sentence based on "the new First Offender Guidelines [in effect this year]," which he does not specify.[86] Assuming he is referring to the Sentencing Guidelines amendment titled "Alternatives to Incarceration for Nonviolent First Offenders"[87]—in effect November 1, 2018—this is not grounds for relief. The amendment—application note 4 to U.S.S.G. § 5C1.1—recommends that courts consider imposing a sentence other than imprisonment "[i]f the defendant is a nonviolent first offender and the applicable guideline range is in Zone A or B of the Sentencing Table."[88] Cano-Bahena, however, does not qualify because his total offense level was 31, which is indisputably within Zone D of the Sentencing Table.[89] Moreover, to the extent Cano-Bahena is referring to the "safety valve" exception, as explained above, this does not warrant reconsideration of his sentence. The First Offender Guidelines thus are not grounds for granting § 2255 for Cano-Bahena.

### IV. Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must issue or

---

[85]*See Reed v. Farley*, 512 U.S. 339, 358 (1994) (citation omitted) ("[C]laims will ordinarily not be entertained under § 2255 that have already been rejected on direct review"); *United States v. Silva*, 430 F.3d 1096, 1098 n.3 (10th Cir. 2005) (finding that a petitioner could not raise claims in a § 2255 motion that had already been considered and denied on direct appeal).

[86]Doc. 203 at 9.

[87]*See* U.S.S.G. § 5C1.1 application note 4 (2018).

[88]*Id.*

[89]*See* U.S.S.G. Sentencing Table.

deny a certificate of appealability when it enters a final order adverse to the applicant.[90] A court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right.[91] To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[92] For the reasons stated above, the Court finds that Cano-Bahena has not satisfied this standard and, therefore, denies a certificate of appealability as to its ruling on his § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Gilberto Cano-Bahena' motion to vacate his conviction pursuant to § 2255 (Doc. 203) is **DENIED** without an evidentiary hearing. He is also denied a certificate of appealability.

**IT IS SO ORDERED.**

Dated: May 6, 2019

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[90] The denial of a § 2255 motion is not appealable unless a circuit justice or a district judge issues a certificate of appealability. Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

[91] 28 U.S.C. § 2253(c)(2).

[92] *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)).